**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN MARCHETTI, Plaintiff,<br>v.<br>46 LABS, LLC d/b/a HYPERCUBE NETWORKS; DIGITAL SOLUTIONS INC., individually and d/b/a GDS TELECOM and GDS SOLUTIONS; RURAL TELECOM EXPERTS, INC.; and JOHN DOES 1–10, Defendants. | Civil Action No. 2:26-cv-05805-CFK<br>Hon. Chad F. Kenney |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT RURAL TELECOM EXPERTS, INC.'S MOTION TO DISMISS**

Plaintiff John Marchetti, proceeding pro se, respectfully submits this Response in Opposition to Defendant Rural Telecom Experts, Inc.'s ("RTE") Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6) (ECF No. 25).

RTE seeks dismissal by portraying itself as a passive telecommunications intermediary while disregarding contemporaneous evidence connecting it to Plaintiff's calls, its reported control over Plaintiff's do-not-call status, and substantial contradictions in the sworn declarations supporting its motion. On July 22, 2026, Amy Lasitter of 46 Labs reported that two carriers had agreed to disclosure of their contact information and had placed Plaintiff's number on "their do not call list." She identified RTE and Global Digital Solutions as the two carriers that "sent you these calls." First Amended Complaint ("FAC") ¶¶ 34–36, ECF No. 7; ECF No. 31-10, Exhibit F.

RTE's CEO, Dave Ahmadbadi, separately swore that no carrier, "including 46 Labs, LLC," contacted RTE concerning Plaintiff's number before late July 2026. ECF No. 25-2 ¶ 12. Ahmadbadi also submitted a second declaration for Nikoo Products Inc., RTE's registered agent, contesting Plaintiff's September 24 service despite the same exact Bellingham address shared by those businesses and documented unsuccessful service efforts. ECF Nos. 25-4, 31-6, 31-7. The

Court has already allowed Counts I and II of the operative FAC to proceed against 46 Labs. ECF Nos. 28–29. RTE's separate challenges likewise should be denied.

## TABLE OF AUTHORITIES

**Cases**

Ford Motor Co. v. Montana Eighth Judicial District Court, 592 U.S. 351 (2021)
Hasson v. FullStory, Inc., 114 F.4th 181 (3d Cir. 2024)
In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198 (3d Cir. 2002)
Lacon v. Education Principle Foundation, No. 21-3957, 2022 WL 2240074 (E.D. Pa. June 22, 2022)
Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324 (3d Cir. 2009)
O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312 (3d Cir. 2007)
Perrong v. Chase Data Corp., No. 22-2628, 2024 WL 329933 (E.D. Pa. Jan. 26, 2024)
Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003)
Umbenhauer v. Woog, 969 F.2d 25 (3d Cir. 1992)

**Regulatory Authorities**

In re Rules & Regulations Implementing the TCPA, 30 FCC Rcd. 7961 (2015)
47 C.F.R. § 61.26(a)(6); RCW 23.95.450; 42 Pa. Cons. Stat. § 5322(b)

**Federal Rules**

Fed. R. Civ. P. 4(e), 4(h), 4(m), 8(d), 11(c)(2), 12(b)(2), 12(b)(5), 12(b)(6)

## I. LEGAL ARGUMENT

### A. RTE IS SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN PENNSYLVANIA.

Pennsylvania's long-arm statute authorizes personal jurisdiction to the fullest extent permitted by the United States Constitution. 42 Pa. Cons. Stat. § 5322(b).

The Third Circuit explains that specific personal jurisdiction exists where the defendant purposefully directs activities toward the forum, the claims arise out of or relate to those contacts, and exercising jurisdiction is consistent with fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). Physical entry into the forum is not essential; deliberate communications and conduct directed into the forum can establish sufficient contacts. Id. at 317–18.

Where a defendant challenges personal jurisdiction under Rule 12(b)(2), and the Court decides the motion without conducting an evidentiary hearing, the plaintiff need only establish a

prima facie case of personal jurisdiction. The Third Circuit further requires the Court to accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

Plaintiff has satisfied that standard.

The FAC alleges calls received in Pennsylvania, and Lasitter's July 22 email expressly identifies RTE as one of the carriers that sent Plaintiff those calls. The same communication reports RTE's agreement to disclosure of its identifying information and confirms Plaintiff's number was placed on the carriers' do-not-call list. FAC ¶¶ 34–36; ECF No. 31-10, Exhibit F.

These facts identify RTE's own alleged activity concerning the calls, not merely Plaintiff's residence in Pennsylvania.

RTE relies upon its CEO's declaration to deny any meaningful forum contacts. But paragraph 12 of that declaration categorically denies prior carrier contact concerning Plaintiff's number, specifically naming 46 Labs. Lasitter's July 22 communication describes exactly such prior contact.

Plaintiff alleges that Ahmadbadi knowingly made a material misrepresentation under penalty of perjury to manufacture a defense to this action. The directly conflicting dates and statements provide a specific documentary basis for this allegation. At the prima facie stage, RTE's contested declaration should not be credited over contrary evidence supporting Plaintiff's jurisdictional showing.

RTE's federal regulatory filings also undermine its attempt to characterize its business as confined to purely local, isolated activity.

RTE holds an active FCC registration database profile under Filer ID 833318 as a Competitive Access Provider (CAP). By definition, a CAP provides the structural network links designed to transport telecommunications traffic across distinct local exchange transport areas. This nationwide operational capacity is fully realized through their formal filing of Tariff FCC

No. 1, which legally governs Interstate Access Services across the entire United States. By establishing a federal tariff to collect revenue on interstate traffic, RTE created the very commercial pipelines used to transmit traffic into Pennsylvania.

RTE's federal filings are not merely evidence of a theoretical capacity to provide interstate telecommunications services. By filing Tariff FCC No. 1 specifically governing interstate access services, RTE affirmatively established a federal regulatory framework for providing and charging for telecommunications access involving interstate traffic. See 47 C.F.R. § 61.26(a)(1), (e); Exhibits L and M. Such a filing is inconsistent with RTE's attempt to portray itself as an exclusively local carrier with no relevant interstate telecommunications operations. More importantly, the evidence demonstrates an actual connection between RTE's telecommunications operations and Pennsylvania: the challenged calls reached Plaintiff in Pennsylvania, and 46 Labs' July 22, 2026 correspondence specifically identified RTE among the upstream carriers that “sent you these calls.” ECF No. 31-10, Exhibit F. That correspondence also confirmed that Plaintiff was added to those carriers' “do not call list,” further supporting an inference of operational involvement in the challenged traffic. Taken together, RTE's federal filings and the call-specific evidence support Plaintiff's position that RTE's connection to Pennsylvania is neither hypothetical nor incidental.

The August 7, 2025 Anti-Robocall Multistate Litigation Task Force notice (Exhibits N and N-1) additionally identifies RTE as a downstream provider that accepted and transmitted suspicious telephone traffic from Communications and Telephone Systems Co. That documented regulatory identification is relevant to the nature of RTE’s operations and its assertion that it merely functions as a passive intermediary.

The descriptions “upstream” and “downstream” are relative positions within a telecommunications routing chain. RTE may receive traffic from one provider and send it to another. These descriptions do not constitute immunity classifications and do not resolve

Plaintiff's allegations that RTE originated, initiated, directed, controlled, transmitted, or otherwise actively participated in the challenged calls.

RTE relies upon Hasson v. FullStory, Inc., 114 F.4th 181 (3d Cir. 2024), to argue that Plaintiff must show express targeting of Pennsylvania. But Hasson distinguishes the intentional-tort effects test from the traditional minimum-contacts test and explains that both must be considered where appropriate. Id. at 188–89, 197–98.

Indeed, the Third Circuit faulted the district court in Hasson for considering the effects test without also examining traditional jurisdiction under Ford Motor Co. v. Montana Eighth Judicial District Court, 592 U.S. 351 (2021). The traditional inquiry considers the defendant's deliberate forum contacts and whether the litigation arises out of or relates to them.

Here, Plaintiff's case concerns telephone calls allegedly sent by RTE into Pennsylvania, not merely an injury felt there because Plaintiff happens to reside in the Commonwealth. That distinction matters. The relevant activity is the alleged direction and transmission of calls into the forum itself.

RTE's reliance on decisions involving defendants with only incidental relationships to calls is likewise misplaced. In Lacon v. Education Principle Foundation, No. 21-3957, 2022 WL 2240074, at *3 (E.D. Pa. June 22, 2022), the court distinguished a lead seller that did not supervise, direct, or monitor the calls made by others. Here, Plaintiff alleges a more substantial role supported by the July 22 disclosure and RTE's reported do-not-call action.

In Perrong v. Chase Data Corp., No. 22-2628, 2024 WL 329933, at *2–3 (E.D. Pa. Jan. 26, 2024), the court found sufficient Pennsylvania contacts where the defendants worked closely with customers on communications directed to a Pennsylvania telephone number, distinguishing an uninvolved lead seller. Although Perrong involved different facts, it demonstrates why a defendant's operational participation and direction of telecommunications traffic are material to specific jurisdiction.

RTE's own reported response to Plaintiff's calls supports the same functional inquiry.

Plaintiff respectfully requests outright denial of RTE's Rule 12(b)(2) motion on the existing record.

Plaintiff previously sought expedited discovery specifically to determine the defendants' technical and contractual roles. The Court denied expedited discovery, leaving those matters for ordinary discovery. Plaintiff respectfully relies on the FAC's allegations and the ordinary discovery process—not any contention that the Court erred in denying expedited discovery—to obtain records uniquely controlled by the defendants. See Plaintiff's Opposition to 46 Labs' Motion to Dismiss, ECF No. 19, at 5–6.

Only if the Court concludes that the present jurisdictional evidence is insufficient, Plaintiff alternatively requests limited jurisdictional discovery before dismissal. In Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456–57 (3d Cir. 2003), the Third Circuit reversed a jurisdictional dismissal where the defendant possessed information concerning its relevant contacts that the plaintiff could obtain only through discovery, and the plaintiff had presented specific, nonfrivolous allegations supporting further investigation.

That alternative relief would permit examination of RTE's Pennsylvania-destined traffic, relevant carrier and customer relationships, call-handling records, and do-not-call procedures. It is not a concession that Plaintiff's existing evidence is inadequate.

**B. RTE'S OWN CONDUCT DEFEATS ITS CLAIM THAT IT WAS MERELY A PASSIVE CARRIER.**

RTE's defense depends upon the proposition that it neither initiated the challenged calls nor possessed meaningful authority over their placement.

But the FCC has expressly rejected the premise that only the individual physically dialing a telephone can initiate a call. In its 2015 TCPA ruling, the Commission explained that an entity may be deemed to initiate a call when it is so involved in placing the particular call that

responsibility follows from the totality of the facts and circumstances. In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 7980–81 ¶ 30 (2015).

The rule requires examination of actual conduct and control, not acceptance of an entity's self-selected description as a common carrier or intermediary.

Lasitter expressly identified RTE as having "sent you these calls." She further reported that RTE agreed to disclosure of its identifying information and confirmed Plaintiff's number had been placed on "their do not call list." ECF No. 31-10, Exhibit F.

The words are "do not call list." They are not a reference to generalized network blocking, unrelated technical remediation, or a mere industry-wide compliance filing.

RTE's own memorandum argues that the TCPA's internal do-not-call obligations apply to telemarketers rather than passive carriers. ECF No. 25-1, at 17–18. That argument makes Lasitter's statement especially consequential.

If RTE truly had no role in initiating, directing, or controlling the challenged campaign, why did the carrier identified as having sent the calls reportedly maintain or apply a do-not-call list in response to Plaintiff's individualized complaint?

Plaintiff submits that this reported conduct constitutes compelling circumstantial evidence of operational control over whether Plaintiff continued to receive the calls, placing RTE's conduct directly within the FCC's totality-of-the-circumstances inquiry.

RTE cannot have it both ways. It cannot insist that it was a wholly passive conduit with no influence over the campaign while ignoring evidence that it participated in responding to the complaint and confirmed an individualized do-not-call action.

The FAC expressly pleads that the defendants participated in the relevant operations in presently disputed capacities. RTE's precise role cannot be defeated merely by its assertion that another entity physically originated the traffic.

Furthermore, before initiating this litigation, Plaintiff provided Defendants with notice of his intent to sue and requested information concerning the entities responsible for the challenged calls. Rather than identifying a different responsible party, RTE disclaimed liability by characterizing itself as merely a carrier, which the Plaintiff disputes. Plaintiff expressly included John Does 1–10 in the FAC to account for additional responsible entities whose identities remain undisclosed. RTE cannot rely upon unidentified third parties to defeat Plaintiff's claims while withholding the information necessary to determine their respective roles. The FCC's robocall mitigation framework imposes due-diligence and reporting obligations upon telecommunications providers concerning their customers and upstream traffic sources. Those obligations further establish the relevance of RTE's internal customer-identification and traffic records to discovery.

The records identifying the operator of the do-not-call list, the systems enforcing it, the customer accounts associated with Plaintiff's calls, and the authority to accept, reject, direct, originate, or suppress particular calls remain within the defendants' control.

Plaintiff's allegations and the July 22 disclosure provide a specific, factual basis for pursuing those issues through ordinary discovery.

RTE's passive-carrier characterization is a disputed factual assertion, not an established defense warranting dismissal of Counts I and II.

## C. RTE'S SERVICE CHALLENGE RELIES UPON CONTRADICTORY DECLARATIONS AND EVIDENCE OF APPARENT DELIBERATE EVASION.

Federal Rule of Civil Procedure 4(h) governs service upon corporate defendants and permits service through methods authorized by the applicable state law under Rules 4(h)(1)(A) and 4(e)(1).

Washington law authorizes service upon an entity's registered agent. RCW 23.95.450(1). It further provides alternative methods where a registered agent cannot, despite reasonable diligence, be served. RCW 23.95.450(2)–(4).

The statutory framework recognizes precisely the kind of practical difficulty documented here: a corporation's registered agent is designated in public records, but attempts to serve the agent at that address fail.

Ahmadbadi submitted two declarations under penalty of perjury: one as RTE's Chief Executive Officer, ECF No. 25-2, and another as the authorized representative of Nikoo Products Inc., RTE's registered agent, ECF No. 25-4.

The Washington Secretary of State records identify RTE and Nikoo at the same exact street address, building, and suite number: 1329 N. State Street, Suite 308, Bellingham, Washington. ECF Nos. 25-3 and 31-14.

In the Nikoo declaration, Ahmadbadi identifies that office as the location where process directed to RTE's registered agent is received. ECF No. 25-4 ¶ 3.

Yet Plaintiff's professional process server documented repeated unsuccessful attempts there. The contemporaneous account describes a locked building, a blacked-out suite, handwritten identification rather than ordinary corporate signage, and the absence of anyone available to receive process. ECF Nos. 31-6 and 31-7, Exhibits B and C.

Plaintiff twice sought a functioning service address directly from RTE. ECF Nos. 31-8 and 31-9, Exhibits D and E. Neither request resulted in the identification of an alternative address.

The resulting position is untenable. Ahmadbadi speaks under oath for both the defendant and its registered agent, identifies the same apparently unavailable address for both, and then seeks dismissal because Plaintiff could not complete service at that location.

Plaintiff alleges that this arrangement and the subsequent litigation position constitute deliberate obstruction rather than mere administrative oversight.

On September 24, 2026, Plaintiff's process server delivered the summons and FAC to Hope Reed at Washington Registered Agent, LLC, the registered agent for Nikoo. The sworn return records that delivery and the represented acceptance on RTE's behalf. ECF No. 22.

Ahmadbadi's Nikoo declaration denies that Washington Registered Agent, LLC or Hope Reed possessed authority to accept RTE's process and denies receipt by Nikoo. ECF No. 25-4 ¶¶ 4–7.

Those denials directly conflict with the sworn return's account of the service transaction, creating a direct evidentiary dispute compounded by what appears to be a blatant attempt by Defendant to evade service.

The overlapping corporate authority, identical business address, documented inaccessible suite, unanswered service inquiries, and subsequent sworn denials provide ample factual grounds for rejecting RTE's attempt to portray Plaintiff as simply having neglected his service obligations.

Plaintiff maintains that September 24, 2026 service was valid. His separately filed request for alternative service and additional Rule 4(m) time expressly preserves that position. ECF No. 31.

Even if the Court ultimately determines that further service is required, dismissal is not warranted.

In Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992), the Third Circuit held that dismissal for insufficient service is inappropriate where a reasonable prospect remains that service can be accomplished; in those circumstances, the district court should, at most, quash the attempted service and permit proper service to proceed.

Plaintiff has already documented multiple good-faith attempts, established working corporate email communications with RTE, and requested an appropriate alternative method. ECF No. 31. RTE has also appeared through counsel and has actual notice of this action.

The Court should therefore deny RTE's Rule 12(b)(5) motion, uphold Plaintiff's position concerning the September 24 service, or alternatively permit completion of service without dismissing this litigation.

**D. THE FIRST AMENDED COMPLAINT STATES VIABLE TCPA CLAIMS AGAINST RTE.**

The Court has already addressed the sufficiency of the operative FAC's federal TCPA allegations in its October 20, 2026 memorandum resolving 46 Labs' motion to dismiss. ECF No. 28.

In that memorandum, the Court expressly acknowledged Plaintiff's allegations that the precise roles, account ownership, and contractual relationships among the defendants would require discovery. Nevertheless, the Court held that the FAC's allegations concerning the identified telecommunications participants and Lasitter's disclosure were sufficient at the pleading stage to allege call initiation. ECF No. 28, at 4–5.

That reasoning is particularly consequential here because RTE is one of the two entities Lasitter specifically identified as having sent Plaintiff the calls.

RTE attempts to distinguish itself from 46 Labs by insisting it merely occupied a different point in the telecommunications chain. But it fails to establish why that self-serving characterization should override the FAC's alternative allegations and the contemporaneous communication directly identifying RTE.

RTE is attempting to create a distinction without a material difference.

The FAC alleges the challenged commercial calling campaign, use of artificial or prerecorded voice technology, lack of consent, longstanding do-not-call registrations, repeated opt-out efforts, and continued calls. It further alleges facts connecting RTE to that traffic. FAC ¶¶ 1–14, 27, 33–36, 66–73, 85–99.

Federal Rule of Civil Procedure 8(d) expressly permits pleading in the alternative. The rule is especially important where the defendants possess the technical and contractual information required to distinguish among participants in an integrated telecommunications operation.

The Third Circuit has recognized that factual allegations based on information and belief may be appropriate where the underlying information is peculiarly within the defendant's

knowledge or control. In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198, 216 (3d Cir. 2002). This principle supports Plaintiff’s use of alternative allegations concerning the defendants’ internal operational relationships, provided the pleading supplies a factual basis—which the FAC does.

The Court’s October 20 memorandum supplies an even more direct answer. It considered the same FAC and rejected the contention that the absence of fully developed internal telecommunications evidence required dismissal of the federal claims at the pleading stage.

RTE’s new characterization of its own role does not justify a different result merely because it insists another participant must bear all responsibility.

Moreover, RTE’s own reported agreement to disclosure and its individualized do-not-call action provide evidence of active involvement beyond the generic association of a carrier with a network.

Vicarious Liability. RTE's challenge to vicarious liability ignores that the FAC expressly pleads direct and alternative liability under Rule 8(d). FAC ¶¶ 33–36, 45. The FCC recognizes that liability may arise from sufficient involvement in initiating calls or, separately, through applicable agency principles. In re Rules & Regulations Implementing the TCPA, 30 FCC Rcd. 7961, 7980–81 ¶ 30 (2015); In re DISH Network, LLC, 28 FCC Rcd. 6574, 6584–87 (2013). Lasitter's identification of RTE as having sent Plaintiff's calls, together with its reported do-not-call action, provides a factual basis for examining RTE's direct involvement and its relationships with other participants. ECF No. 31-10, Exhibit F. RTE's denial of an agency relationship does not dispose of the independently pleaded direct-liability theory.

Repeated Solicitations Under Count II. RTE's contention that Plaintiff failed to identify repeated solicitations by or on behalf of the same entity disregards the FAC's allegations of more than 100 substantially similar calls promoting the same consumer-lending campaign. FAC ¶¶ 1, 66–73. The July 22 disclosure identifies RTE among the carriers responsible for sending those

calls; it does not limit RTE's involvement to a single call. ECF No. 31-10, Exhibit F. Whether RTE handled the calls directly or through associated entities, and how many calls are attributable to each participant, are factual matters reflected in the defendants' internal records—not grounds to disregard the pleaded repeated campaign.

Improper Group Pleading. RTE's accusation of impermissible group or “shotgun” pleading ignores the FAC's express identification of RTE, the specific July 22 disclosure connecting it to Plaintiff's calls, and the alternative liability allegations permitted by Rule 8(d). FAC ¶¶ 27, 33–36, 40, 44–45. Plaintiff has not merely named unrelated companies collectively; he has identified participants in the challenged telecommunications operation and alleged their involvement in presently disputed capacities. The precise division of responsibility remains within the defendants' knowledge, but that does not erase the specific allegations directed at RTE or the factual basis supporting them.

The FAC sufficiently alleges RTE’s participation in the challenged conduct. Counts I and II should proceed.

**E. THE COURT’S OCTOBER 20 ORDER GOVERNS COUNTS III AND IV.**

On October 20, 2026, the Court dismissed Counts III and IV with prejudice. ECF Nos. 28–29. Plaintiff preserves his previously stated positions concerning those claims while recognizing the operative effect of the Court’s order.

The present opposition therefore seeks to preserve Counts I and II against RTE and prevent dismissal of the surviving federal TCPA claims.

RTE's request to dismiss Plaintiff's demand for attorneys' fees and other relief is premature. Plaintiff respectfully requests that the Court defer determination of recoverable fees, damages, costs, and other relief until the appropriate stage of these proceedings, preserving Plaintiff's right to seek any relief authorized by applicable law.  RTE has prematurely overlooked the Plaintiff's FAC express limitation to fees “authorized by law and actually incurred.” FAC at 16, ECF No. 7.

## II. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. DENY Rural Telecom Experts, Inc.'s Motion to Dismiss (ECF No. 25) as to Counts I and II;
2. DENY RTE's request to dismiss or quash service, recognizing Plaintiff's maintained position that September 24, 2026 service was valid;
3. Alternatively, permit completion of service pursuant to Plaintiff's pending motion, ECF No. 31, without dismissing the action;
4. Only if the Court finds the existing jurisdictional showing insufficient, permit limited jurisdictional discovery before any dismissal under Rule 12(b)(2); and
5. Grant such further relief as the Court deems just and proper.

Dated: October 25, 2026
Respectfully submitted,

John Marchetti
Plaintiff, Pro Se
113 Academy Road
Clifton Heights, PA 19018
610-638-9809
jmarchetti4@gmail.com