JEFF JACKSON
ATTORNEY GENERAL

TRACY NAYER
SPECIAL DEPUTY ATTORNEY GENERAL
TNAYER@NCDOJ.GOV

August 7, 2025

Exhibit N

Nasser Shokoufehnejad, CEO
Communications and Telephone Systems Co.
1050 Curtis Street
Denver, CO 80202
*Sent via certified mail, return receipt requested, and via email to* info@communicationsandtelephone.com; support@telephonesystemscom.com

**Re: NOTICE from the Anti-Robocall Multistate Litigation Task Force Concerning Communications and Telephone Systems Co.'s Failures to Comply with the FCC's Requirements Regarding the Robocall Mitigation Database and/or Traceback Participation**

Dear Mr. Shokoufehnejad:

The Anti-Robocall Multistate Litigation Task Force ("Task Force")[1] has been made aware that Communications and Telephone Systems Co. ("Communications and Telephone Systems")[2] is transmitting calls on or to the U.S. telephone network while failing to comply with certain mandates from the Federal Communications Commission ("FCC"). These mandates require all voice service providers to: (1) file a certification and robocall mitigation plan—which plan must describe with particularity the provider's specific mitigation practices addressing how it avoids originating, carrying, and/or processing illegal robocall traffic—in the FCC's Robocall Mitigation Database ("RMD")[3]; (2) refuse to accept call traffic from any voice service provider—whether foreign or domestic—that is not registered in the RMD[4]; and (3) respond to traceback requests

[1] The Anti-Robocall Multistate Litigation Task Force is a 51-member bipartisan collective of State Attorneys General, led by the Attorneys General of Indiana, North Carolina, and Ohio, which is focused on actively investigating and pursuing enforcement actions against various entities in the robocall ecosystem that are identified as being responsible for significant volumes of illegal and fraudulent robocall traffic routed into and across the country.

[2] FCC Registration No. 34726976; Robocall Mitigation Database No. RMD0015919.

[3] *See Call Authentication Trust Anchor*, WC Docket No. 17-97, Sixth Report and Order and Further Notice of Proposed Rulemaking, FCC 23-18, at 16 ¶28 to 29 ¶52 (Mar. 17, 2023) (hereinafter "*RMD R&O*"), *available at* https://docs.fcc.gov/public/attachments/FCC-23-18A1.pdf; 47 C.F.R. § 64.6305(d)–(f).

[4] *See RMD R&O* at 31 ¶58; 47 C.F.R. § 64.6305(g); *see also Call Authentication Trust Anchor*, WC Docket No. 17-97, Second Report and Order, FCC 20-136, at 48 ¶90, 49 ¶93 (Oct. 1, 2020) (hereinafter "*Second Caller ID Authentication Order*"), *available at*

within 24 hours of receiving such requests.[5]

This Notice is intended to apprise you of the Task Force's concerns regarding Communications and Telephone Systems' lack of compliance with some or all of these FCC mandates, and to request a response as to why Communications and Telephone Systems is disregarding its obligations to demonstrate its commitment to mitigate the origination and/or transmission of illegal and/or suspicious robocalls on or through its network.

**Task Force's Findings and Concerns Regarding Communications and Telephone Systems**

As Communications and Telephone Systems should well know, originating and/or transmitting illegal robocalls are violations of the Telemarketing Sales Rule ("the TSR"),[6] the Telephone Consumer Protection Act ("the TCPA"),[7] and/or the Truth in Caller ID Act,[8] as well as

---

https://docs.fcc.gov/public/attachments/FCC-20-136A1.pdf.

[5] *See Advanced Methods to Target and Eliminate Unlawful Robocalls,* CG Docket No. 17-59; *Call Authentication Trust Anchor*, WC Docket No. 17-97; Seventh Report and Order in CG 17-59 and WC 17-97, Eighth Further Notice of Proposed Rulemaking in CG 17-59, and Third Notice of Inquiry in CG 17-59, FCC 23-37, at 9 ¶21 to 11 ¶28 (May 19, 2023) (hereinafter "*All Provider 24-Hour Traceback R&O*"), *available at* https://docs.fcc.gov/public/attachments/FCC-23-37A1.pdf; *Advanced Methods to Target and Eliminate Unlawful Robocalls,* CG Docket No. 17-59; *Call Authentication Trust Anchor*, WC Docket No. 17-97; Sixth Report and Order in CG 17-59, Fifth Report and Order in WC 17-97, Order on Reconsideration in WC 17-97, Seventh Further Notice of Proposed Rulemaking in CG 17-59, and Fifth Further Notice of Proposed Rulemaking in WC 17-97, FCC 22-37, at 30 ¶65 to 32 ¶70 (May 20, 2022) (hereinafter "*Gateway RMD–Traceback R&O*"), *available at* https://docs.fcc.gov/public/attachments/FCC-22-37A1.pdf; 47 C.F.R. § 64.6305(a)(2), (b)(2), and (c)(2); 47 C.F.R. § 64.6305(d)(2)(iii), (e)(2)(iii), and (f)(2)(iii).

[6] 15 U.S.C. §§ 6101–6108; 16 C.F.R. §§ 310.3, 310.4. It is a violation of the Federal Trade Commission's TSR for voice service providers to provide substantial assistance to customers that the provider "knows or consciously avoids knowing" are engaged in practices that violate TSR provisions against deceptive and abusive telemarketing acts or practices. 16 C.F.R. § 310.3(b).

[7] 47 U.S.C. § 227; 47 C.F.R. §§ 64.1200, 64.1604. Under the TCPA, the Federal Communications Commission promulgated rules restricting calls made with automated telephone dialing systems, calls delivering artificial or prerecorded voice messages, 47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B); 47 C.F.R. § 64.1200(a)(1)–(3), and generally prohibiting solicitation calls placed to numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). The TCPA also restricts all artificial or prerecorded voice messages that fail to disclose the identity and telephone number of the caller responsible for initiating the call and that fail to provide an automated opt-out mechanism in advertising or telemarketing messages. 47 U.S.C. § 227(d)(3) and 47 C.F.R. § 64.1200(b).

[8] 47 U.S.C. § 227(e); 47 C.F.R. § 64.1604. Under the federal Truth in Caller ID Act, it is generally unlawful for a person to "knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." 47 U.S.C. § 227(e); 47 C.F.R. § 64.1604.

state consumer protection statutes. State Attorneys General are authorized to bring enforcement actions under these federal statutes and rules.[9] State Attorneys General are also empowered to enforce their respective state laws regulating various aspects of the initiation and transmission of illegal robocall and telemarketing call traffic across the U.S. telephone network.

Further, all voice service providers—whether foreign or domestic—are required to file a certification and robocall mitigation plan in the FCC's RMD in order to "ensure that every provider in the call chain is covered by the same basic set of rules . . . [to] increase transparency and accountability,"[10] to facilitate enforcement efforts,[11] and "because it has become increasingly clear that provider due diligence and the use of call analytics are key ways to stop illegal robocalls."[12] All voice service providers must also refuse call traffic sent by a non-gateway intermediate provider that is not registered in the RMD.[13]

Additionally, all providers in the call path are required to respond to tracebacks, generally within 24 hours of receiving such requests,[14] because "[r]apid traceback is essential to identifying both callers placing illegal calls and the voice service providers that facilitate them[,]"[15] and because "voice service providers do not retain call detail records for a consistent period of time, so the traceback process must finish before any voice service providers in the call path seeking to shield bad actors dispose of their records."[16]

---

[9] State Attorneys General have concurrent authority with the Federal Trade Commission to sue to obtain damages, restitution, or other compensation on behalf of their citizens for violations of the TSR. 15 U.S.C. § 6103; 16 C.F.R. § 310.7. State Attorneys General are authorized to bring enforcement actions to enjoin violative calls and recover substantial civil penalties for *each violation* of the TCPA. 47 U.S.C. § 227(g)(1). State Attorneys General have the authority to bring enforcement actions for violations of the Truth in Caller ID Act and its prohibition against illegal caller identification spoofing, 47 U.S.C. § 227(e)(6), which violative conduct can lead to assessments of civil penalties of up to $10,000 for each violation or three times that amount for each day of continuing violations, and which penalties are assessed in addition to those for any other penalties provided for by the TCPA. 47 U.S.C. § 227(e)(5)(A), (e)(6)(A).

[10] *See RMD R&O* at 21 ¶38; 47 C.F.R. § 64.6305(d)–(f), (g)(2); *see also Second Caller ID Authentication Order* at 49 ¶93 (instructing that "foreign voice service providers that use U.S. telephone numbers to send voice traffic to U.S. subscribers must file the same certification as U.S. voice service providers in order to be listed in the database").

[11] *See RMD R&O* at 21 ¶38.

[12] *See id.* at 23 ¶41.

[13] *See id.* at 31 ¶58; 47 C.F.R. § 64.6305(g)(4).

[14] *See All Provider 24-Hour Traceback R&O* at 9 ¶21 to 11 ¶28; *Gateway RMD–Traceback R&O* at 30 ¶65 to 32 ¶70; 47 C.F.R. § 64.6305(a)(2), (b)(2), (c)(2), (d)(2)(iii), (e)(2)(iii), and (f)(2)(iii).

[15] *See All Provider 24-Hour Traceback R&O* at 9 ¶22.

[16] *See id.*

The Task Force's review of the FCC's RMD, as well as call traffic information from industry sources, including USTelecom's Industry Traceback Group ("ITG")[17] and ZipDX LLC ("ZipDX"),[18] shows that Communications and Telephone Systems is failing in its obligations to comply with one or more of these federal mandates. For your reference, some of the Task Force's findings are included below.

**Communications and Telephone Systems Failed to Respond to Traceback Notices for Illegal and/or Suspicious Call Traffic**: Call traffic data from the ITG shows that, since January 2025, Communications and Telephone Systems did not respond to at least 20 traceback notices for calls it originated and/or transmitted on or to the U.S. telephone network. These notices from the ITG cited recurrent high-volume illegal and/or suspicious robocalling campaigns concerning tax relief scams and loan/grant approval scams, with Communications and Telephone Systems identified as the last traceable hop for each traced call.

The following providers accepted and transmitted this illegal and/or suspicious call traffic directly from Communications and Telephone Systems on or to the U.S. telephone network:

- Armadillo Marketing Ltd
- EON Telecom Inc.[19]
- Lynk Telecom / Voyce Telecom LLC / R Squared / Bluetone Communications
- Rural Telecom Experts, Inc

---

[17] Established in 2015, the ITG is a private collaborative industry group—composed of providers across wireline, wireless, VOIP, and cable services—that traces and identifies the sources of suspected illegal and suspicious robocalls. In December 2019, Congress enacted the Pallone–Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act ("TRACED Act") to combat the scourge of unlawful robocalls. *See* Pub. L. No. 116-105, § 13(d), 133 Stat. 3274 (2019). Following its enactment, the Federal Communications Commission designated the ITG as the official private-led traceback consortium charged with leading the voice communications industry's efforts to trace the origin of suspected illegal robocalls through various communications networks. *See* 47 C.F.R. § 64.1203.

[18] ZipDX is a provider of web- and phone-based collaboration services, which also focuses resources on developing and making technology available that is directed at mitigating illegal robocalls and other telephone-based fraud and abuse. ZipDX's proprietary tool "RRAPTOR" is one such technology, which is an automated robocall surveillance tool that captures call recordings and information for calls largely associated with high-volume suspicious calling campaigns, and identifies the providers who have affixed their SHAKEN signatures to each of the captured calls, indicating that the provider is in the call path and whether those providers have attested to knowing the calling party who made the suspicious call and/or knowing of the calling party's right to use that calling number to make that suspicious call. *See* ZipDX, What is RRAPTOR?, https://legalcallsonly.org/what-is-rraptor/ (last visited Jul. 18, 2025).

[19] This voice service provider has also been issued a Notice Letter from the Task Force on this date. A copy of that Notice is available here: https://ncdoj.gov/protecting-consumers/telephones-telemarketing/fighting-robocalls/warning-notices/.

Because of Communications and Telephone Systems' refusal to participate in the traceback process and its identification as the de facto last hop in the call path for these tracebacks, in addition to Communications and Telephone Systems' failure to respond to traceback requests in contravention of the FCC's mandates, the Task Force is concerned about whether Communications and Telephone Systems was, in fact, originating these illegal and/or suspicious calls.

Moreover, because the ITG estimates that each traced call is representative of a large volume of similar illegal and/or suspicious calls,[20] Communications and Telephone Systems is likely causing and/or facilitating significant volumes of illegal and/or suspicious robocalls to ultimately reach U.S. consumers, which calls are transmitted by providers—including Communications and Telephone Systems—that are operating in contravention of the FCC's mandates.

**Additional Information Considered by the Task Force**: Information available from ZipDX indicates that, since January 2025, Communications and Telephone Systems attested to calls for a number of the same high-volume robocalling campaigns for which it received and/or continues to receive traceback notices from the ITG. For instance, ZipDX identified more than 2,070 suspicious calls transmitted by Communications and Telephone Systems from just over 1,900 unique calling numbers,[21] exhibiting characteristics indicative of calls that are violations of federal and state laws; more than 99% of these calls were also made to numbers that have been registered on the National Do Not Call Registry.[22] All of these calls were marked with an A-Level STIR/SHAKEN attestation, indicating that Communications and Telephone Systems both knows the identities of the calling parties that originated these suspicious calls and knows that those callers have legitimately acquired volumes of numbering resources that are being used to make these suspicious calls.

---

[20] USTelecom, *Industry Traceback Group Policies and Procedures*, at 4 (last revised April 2022) (*ITG Policies & Procedures*) (defining "campaign" as "[a] group of calls with identical or nearly identical messaging as determined by the content and calling patterns of the caller," where "[a] single Campaign often represents hundreds of thousands or millions of calls"), *available at* https://r0l986.a2cdn1.secureserver.net/wp-content/uploads/2022/04/ITG-Policies-and-Procedures-Updated-Apr-2022.pdf.

[21] The use of many unique calling numbers for this volume of called numbers indicates a suspicious pattern in your call traffic of "snowshoeing" or "snowshoe spoofing," which is a practice often employed by illegal robocallers and telemarketers to circumvent the protections of the STIR/SHAKEN call authentication framework by using significant quantities of unique numbers for caller IDs on a short-term or rotating basis in order to evade behavioral analytics detection, or to bypass or hinder call blocking or call labeling analytics based on the origination numbers. Telephone numbers used for snowshoeing sometimes cannot themselves receive incoming calls, which has the effect of impeding an audit of the legitimacy of these calling numbers.

[22] Most calls captured by RRAPTOR are calls made to phone numbers that have been registered on the National Do Not Call Registry.

**Requested Action in Response to this Notice**

When Communications and Telephone Systems persists in any of the following conduct—(1) originating and/or transmitting calls while it fails to comply with its obligation to file a certification and robocall mitigation plan in the FCC's RMD; (2) accepting and transmitting calls from voice service providers that fail to comply with their obligations to file a certification and robocall mitigation plan in the RMD; (3) originating and/or transmitting calls without being responsive to traceback requests; and/or (4) accepting and transmitting calls from providers that fail to respond to traceback requests—Communications and Telephone Systems demonstrates its lack of commitment to the integrity of the ecosystem, and signals to its counterparts in industry—and to law enforcement—that Communications and Telephone Systems is not prioritizing compliance with rules and regulations.

For these reasons, the Task Force requests that you review this Notice and provide us with a response within 21 days of the issuance of this Notice detailing how Communications and Telephone Systems intends to address the concerns identified herein.

As a matter of courtesy, we informed several of our federal law enforcement counterparts—including our colleagues at the FCC's Enforcement Bureau[23]—of the Task Force's intention to issue this Notice.

---

[23] The FCC's authorities are broad and may allow for several potential enforcement actions, including a Cease-and-Desist Letter, *see, e.g.*, *FCC Orders Avid Telecom to Cease and Desist Robocalls* https://www.fcc.gov/document/fcc-orders-avid-telecom-cease-and-desist-robocalls (issued Jun. 7, 2023); *FCC Issues Robocall Cease-and-Desist Letter to PZ/Illum*, https://www.fcc.gov/document/fcc-issues-robocall-cease-and-desist-letter-pzillum (issued Oct. 21, 2021), a K4 Public Notice, *see FCC Enforcement Bureau Notifies All U.S.-Based Providers of Rules Permitting Them to Block Robocalls Transmitting From One Eye LLC*, https://www.fcc.gov/document/fcc-takes-repeat-robocall-offenders-attempts-evade-enforcement (issued Feb. 15, 2023), a Notice of Apparent Liability, *see, e.g.*, *John C. Spiller; Jakob A. Mears; Rising Eagle Capital Group LLC; JSquared Telecom LLC; Only Web Leads LLC; Rising Phoenix Group; Rising Phoenix Holdings; RPG Leads; and Rising Eagle Capital Group – Cayman*, Notice of Apparent Liability for Forfeiture, 35 FCC Rcd 5948 (2020), *available at* https://docs.fcc.gov/public/attachments/FCC-20-74A1_Rcd.pdf, a Consumer Communications Information Services Threat ("C-CIST") Designation Notice, *see FCC [Enforcement Bureau] Issues C-CIST Classification for "Royal Tiger"*, https://www.fcc.gov/document/fcc-eb-issues-c-cist-classification-royal-tiger (issued May 13, 2024), or proceedings that may result in removal from the Robocall Mitigation Database, *see, e.g.*, *Viettel Business Solutions Company, Etihad Etisalat (Mobily), Claude ICT Poland Sp. z o. o. dba TeleCube.PL, Nervill LTD, Textodog Inc. dba Textodog and Textodog Software Inc., Phone GS, Computer Integrated Solutions dba CIS IT & Engineering, Datacom Specialists, DomainerSuite, Inc., Evernex SMC PVT LTD, Humbolt Voip, and My Taxi Ride Inc.*, Removal Order, 39 FCC Rcd 1319 (2024), *available at* https://www.fcc.gov/document/fcc-removes-12-entities-robocall-mitigation-database, the latter of which—if completed—would require all intermediate providers and terminating voice service providers to cease accepting your call traffic.

Additionally, while the Task Force will send electronic copies of this Notice to the email addresses of record for the downstream providers mentioned herein, the Task Force encourages Communications and Telephone Systems to share a copy of this Notice with each of its downstream provider customers. A copy of this Notice will also be publicly accessible at https://ncdoj.gov/protecting-consumers/telephones-telemarketing/fighting-robocalls/warning-notices/.

Finally, this Notice does not waive or otherwise preclude the Task Force from bringing an enforcement action related to conduct preceding the date of this Notice, including conduct that resulted in violations related to the call traffic and conduct referenced in this Notice.

The Task Force remains steadfast in its resolve to meaningfully curb illegal robocall traffic. Please direct any inquiries regarding this Notice to my attention at tnayer@ncdoj.gov.

Sincerely,

Tracy Nayer
Special Deputy Attorney General
Consumer Protection Division
North Carolina Department of Justice